FILED
 2021 Jan-15  PM 01:31
 U.S. DISTRICT COURT
     N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# WESTERN DIVISION

| | |
|---|---|
| WARRIOR MET COAL MINING, LLC, ) ) ) Plaintiff, ) ) v. ) ) UNITED MINE WORKERS ) OF AMERICA, DISTRICT 20, ) *et al.*, ) ) Defendants. ) | 7:20-cv-00648-LSC |

### MEMORANDUM OF OPINION

Before the Court are Plaintiff Warrior Met Coal Mining, LLC's ("WMC" or "Plaintiff") Motion for Summary Judgment (doc. 17) and Defendants United Mine Workers of America, District 20 ("District 20"); United Mine Workers of America, Local Union 2245 ("Local 2245"); and Bradley Nix's ("Nix") (collectively, "Defendants") Motion for Summary Judgment (doc. 18). This action arises out Nix's termination and the subsequent arbitration proceeding. Plaintiff filed this action seeking the vacatur of the arbitrator's award, and Defendants have counterclaimed seeking the enforcement of the award. For the reasons stated below, Plaintiff's motion is due to be granted. Defendants' motion is due to be denied.

## I. BACKGROUND[1]

WMC operates a coal mine located in Brookwood, Alabama. The United Mine Workers, through District 20 and Local 2245, are the collective bargaining representatives for miners employed by WMC. Defendants and WMC have a collective bargaining agreement ("CBA"). The CBA governs the employment relationship between WMC and employees who are members of the union. The pertinent parts provide that:

> Article XV—Miscellaneous
>
> . . . .
>
> *Section (g)*   Attendance Control
>
> (1) The Employer shall administer a four (4) strike attendance policy for all absences (whether excused or unexcused). Progressive discipline under the attendance policy shall proceed as follows:
>
>> Strike 1 = verbal warning
>> Strike 2 = written warning
>> Strike 3 = suspension (minimum of 2 days)
>> Strike 4 = discharge

---

[1] The facts set out in this opinion are gleaned from the parties' submissions of facts claimed to be undisputed, their respective responses to those submissions, and the Court's own examination of the evidentiary record. These are the "facts" for summary judgment purposes only. They may not be the actual facts. *See Cox v. Adm'r U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994). The Court is not required to identify unreferenced evidence supporting a party's position. As such, review is limited to exhibits and specific portions of the exhibits specifically cited by the parties. *See Chavez v. Sec'y Fla. Dept. of Corr.*, 647 F.3d 1057, 1061 (11th Cir. 2011) ("[D]istrict court judges are not required to ferret out delectable facts buried in a massive record . . . .").

. . . .

(5) All Employees must arrive dressed and ready to work by their scheduled starting time. Any Employee who arrives after their scheduled starting time and/or unprepared may be sent home and the occurrence shall be considered a strike under this policy.

. . . .

(8) The only issue under this Article XV, Section (g) subject to Article XVI[2] shall be whether the absence resulting in a strike actually occurred.

. . . .

Article XVI—Settlement of Disputes

. . . .

*Section (h)*   Finality of Decision or Settlement

Settlements reached at any step of the grievance procedure shall be final and binding on both parties and shall not be subject to further proceedings under this Article XVI except by mutual agreement.

. . . .

Article XVII—Discharge Procedure

*Section (a)*   Just Cause Required

No employee covered by this Agreement may be disciplined or discharged except for just cause. The burden shall be on the Employer to establish grounds for discharge in all proceedings under this Agreement.

---

[2]   Article XVI covers the settlement of disputes, including through arbitration.

(Doc. 16-1 at 37–39, 44–45.)

Nix was a mine operator for WMC. As a mine operator, Nix was also a member of the union and subject to the CBA. Nix had a lengthy history of attendance problems. Between January 2017 and October 2019, Nix received thirteen strikes under Article XV, Section (g) of the CBA.[3] On October 9, 2019, Nix was two minutes tardy for his shift. Nix was previously at Strike 3. After he was tardy on October 9, he reached Strike 4. Applying the CBA's attendance policy, WMC terminated Nix when he reached Strike 4.

Following his termination, Nix initiated arbitration proceedings in accordance with the CBA. Arbitrator Stone ("Stone") was selected to settle the dispute. Stone concluded that on October 9, 2019, Nix was tardy. Stone went on to determine that Nix's offense was not the type of offense that should always result in a discharge; there were mitigating factors that weighed against discharge; and WMC lacked just cause to terminate Nix's employment for the stated offense. Thus, Stone reinstated Nix and reduced his punishment from termination to suspension.

---

[3] Employees' strikes reset on the anniversary of their employment with WMC.

## II.   STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact[4] and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine if "the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1260 (11th Cir. 2004). A genuine dispute as to a material fact exists "if the nonmoving party has produced evidence such that a reasonable factfinder could return a verdict in its favor." *Greenberg v. Bellsouth Telecomms., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam) (quoting *Waddell v. Valley Forge Dental Assocs.*, 276 F.3d 1275, 1279 (11th Cir. 2001)). The trial judge should not weigh the evidence, but should determine whether there are any genuine issues of fact that should be resolved at trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

In considering a motion for summary judgment, trial courts must give deference to the nonmoving party by "view[ing] the materials presented and all factual inferences in the light most favorable to the nonmoving party." *Animal Legal Def. Fund v. U.S. Dep't of Agric.*, 789 F.3d 1206, 1213–14 (11th Cir. 2015) (citing

---

[4] A material fact is one that "might affect the outcome of the case." *Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1050 (11th Cir. 2015).

*Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)). However, "unsubstantiated assertions alone are not enough to withstand a motion for summary judgment." *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1529 (11th Cir. 1987). Conclusory allegations and a "mere scintilla of evidence in support of the nonmoving party will not suffice to overcome a motion for summary judgment." *Melton v. Abston*, 841 F.3d 1207, 1219 (11th Cir. 2016) (per curiam) (quoting *Young v. City of Palm Bay*, 358 F.3d 859, 860 (11th Cir. 2004)). In making a motion for summary judgment, "the moving party has the burden of either negating an essential element of the nonmoving party's case or showing that there is no evidence to prove a fact necessary to the nonmoving party's case." *McGee v. Sentinel Offender Servs., LLC*, 719 F.3d 1236, 1242 (11th Cir. 2013) (per curiam). Although the trial courts must use caution when granting motions for summary judgment, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

### III.   Discussion

When parties submit a case for arbitration pursuant to a CBA, the award "is treated as a contractual obligation that can be enforced through a [29 U.S.C. § 185] lawsuit." *United Steel v. Wise Alloys, LLC*, 642 F.3d 1344, 1349 (11th Cir. 2011). However, the Court's authority to review an arbitration award is limited. *See IMC-*

*Agrico Co. v. Int'l Chem. Workers Council of United Food & Com. Workers*, 171 F.3d 1322, 1325 (11th Cir. 1999). As such, a court may vacate an arbitration award only by examining "whether an award is irrational, whether it fails to draw its essence from the [CBA] or whether it exceeds the scope of the arbitrator's authority." *Butterkrust Bakeries v. Bakery, Confectionery & Tobacco Workers Intern. Union*, 726 F.2d 698, 699 (11th Cir. 1984). If an arbitrator "issues an award that contradicts the express language of the [CBA]," then the arbitrator "exceeds the scope of his authority and issues an award that fails to draw its essence from the [CBA]." *IMC-Agrico*, 171 F.3d at 1325.

At issue is whether Stone exceeded his authority when he determined WMC lacked just cause to terminate Nix, and whether Stone's decision failed to draw its essence from the CBA.

WMC argues that Stone's decision does not draw its essence from the CBA because he made a just cause determination, which is contrary to the express language of the CBA regarding discipline for absences. WMC states that the language of the CBA makes it clear that the progressive discipline structure for absences culminating with termination stands on its own and should not be subjected to a just cause analysis, even though the CBA also states that an employee may not be terminated except for just cause. WMC relies upon the fact that Article XV,

Section (g) of the CBA makes it clear that the only issue that can be decided by an arbitrator is "whether the absence resulting in the strike actually occurred." As Stone determined that Nix's absence resulting in a Strike 4 being issued actually occurred, that should have been the end of Stone's decision.

Defendants state that Stone was within his authority to conduct a just cause analysis, and that his determination that WMC wrongly terminated Nix should stand. Defendants argue that the arbitration decision should be binding, and that the Court should be exceedingly deferential to Stone's decision. While district courts are limited in their review of arbitration awards, an arbitration award that does not draw its essence from the CBA may be vacated; therefore, Defendants' argument that WMC cannot challenge the arbitration award because it is "final and binding on both parties" is not persuasive. Defendants also rely upon the spirit and history of arbitration to persuade the Court to enforce the arbitration award. While the Court is mindful of the role it carries in reviewing an arbitration award, deference to the arbitrator does not extend to awards that exceed his authority and fail to draw their essence from the CBA.

The crux of Defendants' argument is that the attendance policy must be read in conjunction with and not separate from the just cause provision, which is exactly what Stone did in his decision. Defendants state that because Stone's decision was

arguably construing the CBA, the Court should be deferential to his decision as it does draw its essence from the CBA.

This case is similar to *Warrior & Gulf Navigation Company v. United Steelworkers*, 996 F.2d 279 (11th Cir. 1993) (per curiam). In *Warrior*, a CBA governed the employment relationship between the parties. *Id.* at 279–80. The CBA provided that any "employee who tests positive [for drugs] a second time is subject to immediate discharge." *Id.* at 280 (internal quotation marks omitted). The CBA also had a separate "just cause" provision. *Id.* The plaintiff terminated an employee who failed a second drug test. *Id.* The parties entered into arbitration concerning the employee's termination. *Id.* Although the arbitrator determined that the employee failed a second drug test, the arbitrator entered an award in favor of the employee, reasoning that the employer lacked just cause to terminate him. *Id.* The employer then filed an action in district court seeking a vacatur of the arbitration award. *Id.* The court granted summary judgment in favor of the employer and vacated the arbitration award. *Id.* The court reasoned that the CBA had an express provision that provided for the employee's termination, and that "the arbitrator had no discretion to find that [the plaintiff] lacked 'just cause'" to terminate the employee. *Id.* The union appealed on behalf of the employee, and the Eleventh Circuit affirmed the district court's holding. *Id.* at 281.

Here, the CBA has a progressive discipline policy for attendance, which "shall proceed" by issuing strikes for well-defined behavior. The CBA contains an express provision: "Strike 4 = discharge." Furthermore, the CBA states that the only issue regarding the attendance policy that can be submitted to arbitration is "whether the absence resulting in the strike actually occurred." Stone concluded that the absence resulting in Nix receiving a Strike 4 occurred, thus his inquiry should have stopped there. Like in *Warrior*, where there was an express provision in the CBA regarding termination for failing a drug test, this CBA has an express provision providing for termination when an employee obtains his fourth strike. Furthermore, this section of the CBA specifically provides that the only issue that can be submitted to arbitration is whether the absence resulting in the strike occurred. Stone exceeded his authority when he then determined that WMC lacked just cause to terminate Nix because of mitigating circumstances, which means that his decision did not derive from the essence of the CBA. Accordingly, the arbitration award is due to be vacated and summary judgment is due to be granted in favor of WMC.

IV.   **CONCLUSION**

For the reasons stated above, summary judgment is due to be granted in WMC's favor. The arbitration award is due to be vacated. Defendants' motion for

summary judgment is due to be denied. A separate order consistent with this opinion will be entered contemporaneously herewith.

**DONE** and **ORDERED** on January 15, 2021.

                                            L. Scott Coogler
                                  United States District Judge

202892